**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| ALLEGHENY CASUALTY COMPANY,<br>AMERICAN SURETY COMPANY, INC.,<br>and UNIVERSAL FIRE & CASUALTY,<br><br>Plaintiffs,<br><br>v.<br><br>HON. BRENT BRADBERRY, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br>No. 2:25-cv-03033-TLP-tmp<br><br>JURY DEMAND |

---

**ORDER GRANTING JUDICIAL DEFENDANTS' MOTION TO DISMISS**

---

Plaintiffs Allegheny Casualty Company, American Surety Company, Inc., and Universal Fire & Casualty sued fifteen Circuit and Criminal Judges of the 24th, 25th, 26th, and 30th Judicial Districts ("Judicial Defendants") to invalidate new bail bonding qualifications. (ECF No. 10 at PageID 183–84.) They also sued fourteen County Circuit and Criminal Court Clerks ("County Defendants") to enjoin enforcement. (*Id.*)

Judicial Defendants moved to dismiss the Amended Complaint on the grounds that legislative immunity and, alternatively, sovereign immunity bar Plaintiffs' claims. (ECF No. 28 at PageID 548.) Plaintiffs respond that both legislative and sovereign immunity are inapplicable. (ECF No. 47-1 at PageID 619–20.)

The Court concludes that legislative immunity bars Plaintiffs' section 1983 claims against Judicial Defendants. After dismissing these claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims against Judicial Defendants.

# BACKGROUND

## I. Factual Background

To rule on Judicial Defendants' Motion, this Court must "accept as true well-pleaded factual allegations" in Plaintiffs' Amended Complaint. *See White's Landing Fisheries, Inc. v. Ohio Dep't of Nat. Res., Div. of Wildlife*, 174 F.4th 493, 497 (6th Cir. 2026). The Court next recounts Plaintiffs' allegations.

Plaintiffs are out-of-state bail bond surety companies that provide bail bonding services in Tennessee. (ECF No. 10 at PageID 185, 188.) They challenge local court rules in the 24th, 25th, 26th, and 30th Judicial Districts of Tennessee because those rules impose two kinds of conditions on their ability to write bail bonds. (*Id.* at PageID 185.)

The first requirement in these rules is that licensed bail bonding companies must "deposit substantial monies with each District." (*Id.*) The 24th Judicial District has required all professional bail bonding companies to post "a minimum of $75,000.00 in cash or by pledge as security for bonds" to qualify for bail bond writing privileges. (*Id.* at PageID 197.) The 25th, 26th, and 30th Judicial Districts have enacted similar requirements. (*Id.* at PageID 197–99.)

Plaintiffs also challenge a second requirement because it imposes "arbitrary and capricious collateralization ratios limiting underwriting capacity to a percentage of locally pledged collateral." (*Id.* at PageID 185.) The Judicial Districts each limit the ratio of locally pledged collateral to bond writing capacity. (*Id.* at PageID 197–200.)

Citing Tenn. Code Ann. § 56-15-105(b)(2), Plaintiffs argue that the deposit rule disregards an exemption for bail bond companies. (ECF No. 10 at PageID 185–86.) And they claim that the second requirement also conflicts with that exemption. (*Id.* at PageID 186.) They also note that other Judicial Districts in Tennessee have adopted bail bond rules that honor the

exemption by declining to impose on bail bonding companies "additional deposit requirement[s]" or "local collateralization ratio[s]." (*Id.* at PageID 200 (citation modified).)

## II. Procedural Background

To challenge both kinds of rules, Plaintiffs first sued Judicial Defendants on November 11, 2025. (ECF No. 1 at PageID 1.) And on December 31, 2025, they filed their Amended Complaint against the same fifteen Circuit and Criminal Judges of the 24th, 25th, 26th, and 30th Judicial Districts.[1] (ECF No. 10 at PageID 188–91.)

Plaintiffs asserted five counts against all Defendants, including Judicial Defendants. (*Id.* at PageID 210–230.) Count 1, based on the Dormant Commerce Clause and 42 U.S.C. § 1983, challenges the Judicial Districts' deposit requirements. (*Id.* at PageID 210–12.) Count 2 relies on the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and section 1983 to challenge both kinds of rules. (*Id.* at PageID 213–16.)

The Amended Complaint's three remaining Counts include state-law claims.[2] (*See id.* at PageID 217–30.) Count 3 includes claims that all Defendants have violated Tenn. Code Ann. §§ 56-15-105, 16-2-511, and 16-3-407. (*Id.* at PageID 217–20.) Count 4 relies on those same provisions to seek invalidation of the local collateralization ratio requirements. (*Id.* at PageID

[1] Judicial Defendants include Hons. J. Brent Bradberry, Bruce Irwin Griffey, J. Weber McCraw, A. Blake Neill, Donald H. Allen, Kyle Atkins, Chris Craft, Carlyn L. Addison, James Jones, David Pool, Carolyn Wade Blackett, Raymond Lepone, Jennifer Johnson Mitchell, Lee V. Coffee, and Jennifer Fitzgerald. (*Id.* at PageID 188–91.) The Court will discuss County Defendants in a separate order addressing their Joint Motion to Dismiss. (*See* ECF No. 46.)

[2] Plaintiffs and Judicial Defendants dispute whether Counts 3, 4, and 5 comprise state-law claims. (*See, e.g.*, ECF No. 54 at PageID 660 ("Plaintiffs only *now* try to characterize [Count 5] as a federal-law claim, despite pleading [it] as a state-law claim, as shown by citations to their law." (emphasis in original)).) The Court agrees with Judicial Defendants that these are indeed state-law claims and it explains why below.

220–23.) And Count 5 challenges the local collateralization ratio requirements as arbitrary and capricious under Tennessee statutes. (*Id.* at PageID 223–30.)

Plaintiffs request preliminary and permanent injunctive relief to enjoin Defendants and their agents from enforcing the deposit and local collateralization ratio rules. (*Id.* at PageID 230.) As to Judicial Defendants of the 25th and 26th Judicial Districts, Plaintiffs also seek compensatory damages given the "unlawful[]" financial burden they imposed. (*Id.* at PageID 230–31.) Plaintiffs request that this Court make several "prospective[]" declarations regarding the rules. (*Id.* at PageID 231–37.) And they seek pre- and post-judgment interest, reasonable attorneys' fees, and litigation-related costs. (*Id.* at PageID 237.)

On February 20, 2026, Judicial Defendants moved to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) because legislative immunity bars all claims against them. (ECF No. 28 at PageID 553.) They assert that legislators are "absolutely immune from liability for their legislative activities," and that those activities include courts' "promulgation of rules of practice and procedure." (*Id.* (citation modified).) Judicial Defendants thus argue that they acted in a "legislative capacity" in enacting the local bail bond rules. (*Id.* at PageID 554 (citation modified).)

Plaintiffs counter that legislative immunity does not apply because the rules are "administrative acts" or "regulations[] involving the internal operations of the courts and the management of court-related commercial relationships." (ECF No. 47-1 at PageID 623.) To advance this argument, Plaintiffs urge the Court to apply the Supreme Court's "two-part test" in *Bogan v. Scott-Harris* to determine whether legislative immunity shields conduct. (*See id.* at PageID 624; *see also Bogan v. Scott-Harris*, 523 U.S. 44, 54–56 (1998).)

Judicial Defendants concede no ground in their Reply. (*See, e.g.*, ECF No. 54 at PageID 660 ("Plaintiffs' cases simply do not support their position that legislative immunity is unavailable for the enactment of court rules.").) And they explain that Plaintiffs cite judicial immunity cases that do not concern legislative immunity. (*Id.* at PageID 661.) Next, this Court considers the applicable legal standards and addresses the Parties' arguments.

## LEGAL STANDARD

To survive a motion to dismiss based on Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). A claim is facially plausible if the plaintiff has pleaded enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court must construe the Amended Complaint "in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Anders v. Cuevas*, 984 F.3d 1166, 1174 (6th Cir. 2021) (citation modified). Still, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft*, 556 U.S. at 679.

"When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction." *Hedgepeth v. Tennessee*, 215 F.3d 608, 611 (6th Cir. 2000). And when a court concludes that it lacks subject matter jurisdiction, it "must dismiss the case regardless of the time or resources spent on it." *Akno 1010 Mkt. St. St. Louis Mo. LLC v. Pourtaghi*, 43 F.4th 624, 627 (6th Cir. 2022).

## ANALYSIS

The Court first explains why legislative immunity bars Plaintiffs' federal law claims against Judicial Defendants. Judicial Defendants acted in their "legislative capacity" to enact the bail bonding qualification rules, so this Court recognizes their legislative immunity from liability based on Plaintiffs' section 1983 claims. *See Abick v. State of Mich.*, 803 F.2d 874, 878 (6th Cir. 1986); *see also Alia v. Mich. Supreme Court*, 906 F.2d 1100, 1102 (6th Cir. 1990).

Legislative immunity does not, however, protect Judicial Defendants from Plaintiffs' state-law claims because the doctrine immunizes litigants "from liability under § 1983." *See Bogan*, 523 U.S. at 49, 52. Having dismissed Plaintiffs' federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. *See Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254, 1255 (6th Cir. 1996) ("After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims."). Plaintiffs may still file those claims in a different forum. *See Alia*, 906 F.2d at 1102.

For the reasons below, the Court **GRANTS** Judicial Defendants' Motion to Dismiss. (ECF No. 27.) It **DISMISSES WITH PREJUDICE** Plaintiffs' federal law claims against Judicial Defendants and **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state-law claims against Judicial Defendants.

### I. Motion to Dismiss

#### A. Legislative Immunity Bars Plaintiffs' Section 1983 Claims Against Judicial Defendants

Because Judicial Defendants acted in a "legislative capacity" to enact the bail bonding qualification rules, they are entitled to legislative immunity. As a result, the Court must dismiss Plaintiffs' federal law claims against them. *See Abick*, 803 F.2d at 878. The Court begins by summarizing legislative immunity to explain its reach.

"Regional legislators, local legislators, and even non-legislative officials who act in a legislative capacity" enjoy absolute legislative immunity from claims based on 42 U.S.C. § 1983. *See Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 360, 364 (6th Cir. 2022). Legislative immunity also applies in "lawsuits for monetary damages as well as for prospective relief." *Id.* at 364. While state courts have developed their own doctrines, "legislative immunity under § 1983" is "a question of federal law." *Id.* at 365.

Absolute legislative immunity protects state legislators where they have acted "in the sphere of legitimate legislative activity." *See id.* at 368 (Moore, J., concurring) (citation modified); *see also Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989) ("[W]e join those Circuits which have held that local legislators are protected by absolute immunity when they act in their legislative capacities."). And this kind of immunity "turns on the nature of the act," "not the motive or intent of the official performing it." *Anders*, 984 F.3d at 1181 (citation modified).

To assess whether legislative immunity extends to an act, this Court must ask if the act was "in form, quintessentially legislative." *See Bogan*, 523 U.S. at 55. An act may be "quintessentially legislative" if it involves "signing into law an ordinance," even if the official doing so is "outside the legislative branch." *Id.*

And if that act, "in substance," bears "all the hallmarks of traditional legislation," then legislative immunity shields it. *Id.* (emphasis removed). The Supreme Court has explained that one ordinance bore those hallmarks because it "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55–56. And the ordinance reflected a decision that could have "prospective implications that reach well beyond the particular occupant of the office." *Id.* at 56.

The Sixth Circuit has applied the test in *Bogan* to conclude that although a mayor's

alleged veto of a resolution was "legislative in form," it was not "legislative in substance." *Anders*, 984 F.3d at 1171–72, 1182. As alleged, the veto was "nothing more than an attempt to stop the city from contracting with one specific entity." *See id.* at 1182. Indeed, it was a "pointed act" that did not "indicate a larger policy goal or budgetary concern and appear[ed] more administrative than legislative in character." *Id.* And it did not "involve[] the formulation of policy" or "appl[y] to the community at large." *Id.*

Yet the Sixth Circuit has also applied absolute legislative immunity to limit liability for judges who enact court "rules of practice and procedure" because enacting rules is a "legislative activity." *Alia*, 906 F.2d at 1102 (citing *Abick*, 803 F.2d at 878). That approach recognizes that legislative immunity applies to state judges who "exercis[e] the State's . . . legislative power" and act as "the State's legislators for purposes of issuing" their rules. *Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734 (1980).

At its core, legislative immunity ensures that the "legislative function may be performed independently without fear of outside interference." *Id.* at 731. Judges "acting in their legislative capacity" are therefore "entitled to legislative immunity." *Abick*, 803 F.2d at 878; *see also Smith v. Jefferson Cnty. Bd. of Sch. Com'rs*, 641 F.3d 197, 218 (6th Cir. 2011) ("Officials who are not part of the legislature are entitled to legislative immunity when they perform legislative functions." (citation modified)). Still, it is the defendants' burden to prove their entitlement to legislative immunity. *Canary v. Osborn*, 211 F.3d 324, 328 (6th Cir. 2000).

Judicial Defendants carried this burden because they established that they acted in a "legislative capacity" by enacting the bail bond qualification rules. (*See Abick*, 803 F.2d at 878; *see also* ECF No. 28 at PageID 553–54.) First, the Court shows that Judicial Defendants are eligible for legislative immunity. *See Kent*, 33 F.4th at 364. And second, the Court explains

why they acted in a "legislative capacity" by enacting the rules. *See id.* at 360.

As an initial matter, Judicial Defendants are eligible for legislative immunity as "non-legislative officials who act in a legislative capacity." *See id.* at 364; *see also Alia*, 906 F.2d at 1102. But legislative immunity does not bar Plaintiffs' state-law claims because those are not claims based on section 1983. (*See Bogan*, 523 U.S. at 49, 52; *see also* ECF No. 10 at PageID 217, 220, 223 (asserting Counts 3, 4, and 5, each based on state law).)

The Court must next evaluate whether Judicial Defendants acted in a "legislative capacity" by enacting the rules. *See Kent*, 33 F.4th at 360.

Looking to the "nature of the act," the Court concludes that the rules' enactment was "in form" "quintessentially legislative." *See Bogan*, 523 U.S. at 55. Much like "signing into law an ordinance," enacting local court rules governing bail bonding is "formally legislative" because enacting rules is an "integral step[] in the legislative process." *See id.* Judicial rulemaking, whether in federal or state courts, is integral to the legislative process because it is based on courts' exercise of properly delegated legislative power. *See, e.g.*, *Mistretta v. United States*, 488 U.S. 361, 388 (1989) ("[W]e specifically have upheld not only Congress' power to confer on the Judicial Branch the rulemaking authority contemplated in the various enabling Acts, but also to vest in judicial councils authority to make all necessary orders for the effective and expeditious administration of the business of the courts." (citation modified)).

Judicial Defendants could enact the rules because the Tennessee Legislature empowered them to, so their rulemaking is an "integral step[] in the legislative process" and is therefore "legislative in form." *See Bogan*, 523 U.S. at 55. The Court need look no further than to Plaintiffs' allegations in Count III. Plaintiffs recognize that Tenn. Code Ann. § 16-2-511 authorizes judges of each individual judicial district to promulgate local rules, and that Tenn.

Code Ann. § 16-3-407 allows courts to "adopt additional or supplementary rules of practice and procedure."[3] (ECF No. 10 at PageID 217 (citation modified).) Judicial Defendants have shown that the rules' enactment was, "in form, quintessentially legislative." *See Bogan*, 523 U.S. at 55.

What is more, the rules bear "all the hallmarks of traditional legislation" under the Supreme Court's analysis in *Bogan*, so they are legislative "in substance." *See id.* (emphasis removed). The deposit and local collateralization ratio rules each "reflect[] a discretionary, policymaking decision implicating" the Judicial Districts' "budgetary priorities" and "services." *See id.* at 55–56. And the rules reflect decisions that could have far-reaching "prospective implications." *See id.* at 56.

First, the Court asks whether the deposit rules bear these legislative "hallmarks." *See id.* at 55. Plaintiffs' allegations show that these rules involve a "discretionary, policymaking decision." *See id.* The typical deposit rule requires "all professional bail bonding companies to post a minimum of $75,000.00 in cash or by pledge as security for bonds written" in the Judicial District. (ECF No. 10 at PageID 197; *see also id.* at PageID 198–99 (similar).)

The deposit rules' design and even their specific dollar amounts reflect Judicial Defendants' particular "policy determinations." *See Bogan*, 523 U.S. at 55. These rules also involve Judicial Defendants' balancing of "budgetary priorities": the required minimum amounts could, for instance, reduce an insolvent bail bonding company's financial risk to the court

---

[3] The question of whether Judicial Defendants' rules are valid under Tenn. Code Ann. § 16-2-511 or other provisions is separate from whether Judicial Defendants are entitled to legislative immunity for enacting them. *See Alia*, 906 F.2d at 1102 ("Our holding does not mean that the . . . rule is insulated from attack but, rather, that a state forum instead of a federal one is appropriate."). While Plaintiffs in Count 3 challenge the rules' validity, the Court does not adjudicate that claim on the merits because legislative immunity bars Plaintiffs' federal law claims and the Court then declines to exercise supplemental jurisdiction over Counts 3, 4, and 5. *See Musson Theatrical*, 89 F.3d at 1255.

system. *See id.* And as Plaintiffs also recognize, Defendants' deposit requirements could discourage bail bonding companies from operating in certain Judicial Districts. (ECF No. 10 at PageID 202.) So, the rules have "prospective implications that reach well beyond" the rules' initial drafters. *See Bogan*, 523 U.S. at 56.

The local collateralization ratio rules bear the same "hallmarks." *See id.* at 55. They each reflect a "discretionary, policymaking decision" because Judicial Defendants decided the ceiling for bail bonding companies' total "bond writing capacity" based on the volume of their "locally pledged collateral." (*See id.*; *see also* ECF No. 10 at PageID 222–23.) These rules likewise reflect Judicial Defendants' determination of "budgetary priorities" because encouraging bail bonding companies to pledge a greater amount of "locally pledged collateral" could reduce financial risk to courts. (*See Bogan*, 523 U.S. at 55; *see also* ECF No. 10 at PageID 223.)

No matter how effective or wise, the local collateralization ratio rules could also have "prospective implications that reach well beyond" Judicial Defendants. *See Bogan*, 523 U.S. at 56. Indeed, the rules might stabilize courts' finances or deter bail bonding companies from entering specific bail bond markets. (*See* ECF No. 10 at PageID 223 ("[T]he protectionist effects of the Challenged Rules impede market competition in the bail bonding industry in Defendants' Judicial Districts").) Plaintiffs see the rules as "narrow, court-facing administrative and regulatory requirements for commercial relationships," "not legislative acts setting broad public policy choices." (ECF No. 47-1 at PageID 627.) But they do not explain how the rules fail to reflect Judicial Defendants' "policymaking decisions" or why the rules are "narrow." (*See id.*) In fact, Plaintiffs' allegations censure the rules precisely for their far reach. (*See, e.g.*, ECF No. 10 at PageID 187, 196–97, 201–02.) The Court thus concludes that the local collateralization

rules are legislative "in substance." *See Bogan*, 523 U.S. at 55 (emphasis removed).

The Sixth Circuit's decision in *Anders* fails to support Plaintiffs' arguments because the deposit and local collateralization ratio rules differ from the mayor's "pointed" veto. (*Compare* ECF No. 10 at PageID 197–200, *with Anders*, 984 F.3d at 1182.) These rules reflect complex determinations that balance bail bond companies' finances, their involvement in Judicial Districts' bail bond markets, and how Judicial Districts might decrease their exposure to bail bond companies that cannot satisfy bond-related liabilities. (*See* ECF No. 10 at PageID 197–201 (discussing the rules' requirements and likely effects on bail bond companies).) The veto in *Anders*, though, had a narrow, singular aim: it was "nothing more than an attempt to stop the city from contracting with one specific entity." *See Anders*, 984 F.3d at 1182. It lacked these rules' "larger policy goal[s] or budgetary concern[s]" and it applied only to one "specific entity," not to the "community at large." *See id.*

Because Judicial Defendants promulgated these rules based on the Tennessee Legislature's grants of statutory authority, the rules are "quintessentially legislative" "in form." *See Bogan*, 523 U.S. at 55. And "in substance," the rules bear "all the hallmarks of traditional legislation": they rest on "discretionary, policy determinations," balance "budgetary priorities," and have far-reaching "prospective implications." *See id.* at 55–56 (emphasis removed). As a result, Judicial Defendants acted in their "legislative capacity" to enact these rules and are "entitled to legislative immunity" as to Plaintiffs' § 1983 claims. *See Abick*, 803 F.2d at 878.

Amendment would not save Plaintiffs' federal law claims against Judicial Defendants. *See Hitchcock v. Cumberland Univ. 403(b) DC* Plan, 851 F.3d 552, 557 (6th Cir. 2017). The Court therefore **DISMISSES WITH PREJUDICE** Plaintiffs' federal law claims, including Counts 1 and 2, against Judicial Defendants.

**B. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims**

Having dismissed Plaintiffs' federal law claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law claims. *See Musson Theatrical*, 89 F.3d at 1255. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Id.* at 1254–55. In fact, the Sixth Circuit recognizes a "strong presumption in favor of dismissing supplemental claims." *Id.* at 1255. And here, no "unusual circumstances" overcome that presumption. *See id.* at 1255.

The Court also rejects Plaintiffs' attempt to cast Count 5 as a federal law claim. (*See, e.g.*, ECF No. 47-1 at PageID 632 ("Plaintiffs recognize that *Pennhurst* bars their state law claims (Counts 3 & 4) . . .").) Plaintiffs offer only a thin explanation that while Count 5 refers to "Tennessee law," it also states "an independent violation of federal substantive due process." (*Id.* at PageID 639.) "Arbitrary and capricious," they argue, is not just a state law standard." (*Id.* at PageID 640.)

But Plaintiffs' allegations in Count 5 did not name, cite, or discuss any federal law. (*See* ECF No. 10 at PageID 223–30.) The Amended Complaint did not include a substantive due process claim under the U.S. Constitution or any other federal law claim. *See Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 732 (6th Cir. 2019).

Plaintiffs may assert their state-law claims in a different forum. *See Alia*, 906 F.2d at 1102. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state-law claims, including Counts 3, 4, and 5, against Judicial Defendants.

## CONCLUSION

For the reasons explained above, the Court **GRANTS** the Motion to Dismiss. The Court **DISMISSES WITH PREJUDICE** Plaintiffs' federal law claims against Judicial Defendants for

failure to state a claim. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state-law claims against Judicial Defendants for lack of subject matter jurisdiction.

**SO ORDERED**, this 24th day of September, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE